Bank of America, United States Bank of America, United States Bank of America, Bank of America, Your Honor, my name is Frank Agostino, and I have the privilege of representing Deutsche Bank. I reserve three minutes for rebuttal. The issue for this appeal is whether Deutsche Bank's 1999 form was processable when filed. If the return was processable when filed, then Deutsche Bank is entitled to interest on the undisputed overpayment of tax for that year. Now, the statute that governs whether or not Deutsche Bank is entitled to interest is 6611. That's a unique statute in that the government is agreeing that taxpayers will get interest on their overpayment. But the issue on processability is whether sufficient information is provided to commit mathematical verification of tax liability. And on the form, the tax reform, it says include certain forms. Yes, Your Honor. Presumably to enable mathematical verification, and they weren't included. So why don't you lose? First, Your Honor, we would disagree with the interpretation of what mathematical verification is. Mathematical verification is just the process of adding and subtracting. But you need to see what's behind it, right? No. That's why the form says include form so-and-so. But that's not what the statute says. The statute says mathematical verification of the tax liability shown on the return. So we're not talking about mathematical verification of every line on the return. We're not talking about the mathematical verification of what is behind the return. Deutsche Bank doesn't have to produce all its records to show what its gross income is. No, but in this case, these forms are necessary to arrive at a computation for purposes of whatever line that is on the form. These are the forms that allow you to do the verification, the computation for getting to something on the return, right? No, Your Honor. What is the purpose of the forms? The forms are receipts. And are they no relevance to what numbers show up on the return? You total those numbers to get a line on the return, and that line is a component of the overpayment shown on the return. One, it's not a component of the math shown on the return. Two, none of those forms individually meets the number that's shown on the return. The return itself has multiple lines. A lot of items go into the lines. The statute doesn't require you to provide everything that went into the number in the line. What we're talking about is mathematically verifying the bottom line numbers on the return, not audit of the return, not substantiation of every item that went into each number. But you're not challenging the service's ability to require that you attach certain forms with more information to a return, right? They have the authority to do that. Absolutely. On the 6011, they can define what a return is. But that's not what Congress did in 6611G. See, if Congress had wanted to say, let's use the definition of return that appears every place else in the code, then we wouldn't have 6611G. 6611 says you're getting interest on your overpayment. 6611B says, hey, you know what? We're going to penalize people who file their returns late by denying them interest until the return is filed. But 6611G then says, but a return isn't the return that we're talking about in 6011, all right? Because 6011 defines returns. We chose different terms. Congress chose different terms in 6611G. And they limited it. Oh, we would say at least that they limited what is required for return, knowing that all of the case law that was out there and all the litigation about what constitutes a return for purposes of the Internal Revenue Code. So what is your position, that return is specifically redefined in 6611 to not include attachments? Yes. I mean, the plain language of the statute doesn't say attachments. Well, even if we accepted that, what do you make of the fact that under the final provision to the II, it says whether on the return or on required attachments. Even accepting, therefore, your view of returns being exclusive of attachments, the language is very specific to refer to attachments, right? Well, no. The language says sufficient required information, whether on the return or the required attachments, to permit the mathematical verification of the tax liability shown on the return. So if we parse each word, sufficient, Congress chose sufficient, not all required information. They didn't choose the word they could have said, all required forms, all required attachments. That's not what they chose. Sufficient required information, whether on the return or an attachment, to permit the mathematical verification. If you look at the lines on the return, you can take those lines on the return and verify mathematically the important item on the return, which is the tax liability of the taxpayer, at $105 million. So mathematically, you can verify with the information that is on the return all of the required, what is required by the statute. And we're not talking about auditing, and when we're talking about verification, we're not talking about looking behind. The court below in their footnote 9 says... The statute says required attachments. Why isn't that interpretable to mean attached forms? The forms that the tax form 1120 requires. Your Honor. It says attach them, isn't that a requirement? No, Your Honor. It says whether on the return or the required attachments. We're going back, if we go back to Judge Rader's opinion in CGS. Is your view that attachments are only relevant if they're necessary to permit the mathematical verification, and under the circumstances of this case and this return, they weren't necessary to fulfill the mathematical verification? Is that what you're saying? Yes, Your Honor. I believe that does find support. So what function do they serve? The attachment, the two attachments. The two attachments are receipts for the taxes paid to the withholding interest. And why is the IRS asking for those? Excuse me? Why are they asking for that? Don't they serve some purpose? They serve... They are buying the number that ultimately appears on the return? They're proving that we paid the amount. It doesn't verify the number on the return. It's proof, and it's limited proof, that these amounts were paid. I mean, this is information that we received from third parties. They're kind of receipts for the withholding taxes. There were taxes that were withheld from our income that were given to us by third parties. The third parties filed the returns with the Internal Revenue Service. So the service knows what our payments were.  The return in the aggregate shows all of our payments. If you have in the aggregate... Yeah, but that's predicated on an argument which I think I understand that you make, which is, as long as this stuff is somewhere in the IRS buildings, then that's sufficient to establish that they have it, and therefore it's their responsibility to go elsewhere to get that information, right? Well, they do match it. I mean, it's not a question that it's somewhere in the building. They match these things. And on the audit process, when they audit the overpayment, they will verify that, in fact, the third party has paid in the money that we're claiming credit for. That's not what starts the overpayment refund. The purpose of a definition of overpayment, the government has our money, right? We get interest on Deutsche Bank's money from the filing of a return, right? Well, first, interest is paid on overpayments. Overpayments exist on the date the return is filed. So the fact of the overpayment is not in dispute. The fact that the interest on the overpayment would have started on the due date of the return is not in dispute. What B in 6611 says is, you're not going to get your overpayment interest unless you file a return. Then G does something unique. Instead of adopting 6011's definition of a return, acknowledging, in essence, all of the case law, there's different interpretations of what is a return. They put specific requirements of the return for processability. We're not talking about determining the merits of the item on the return. Processability, so the IRS can enter the information on its computer system, and they're entering the top lines. If they had required each of the components on the line of the return, then you couldn't mathematically verify it without the attachments. But the lines on the return call for the aggregate numbers. The aggregate numbers are there on the return, and based on those aggregate numbers, you can mathematically verify the tax liability on the return, and that's the $105 million that we have on line 5. I mean, Congress, 6621G, uses the word overpayment. Do you agree that the principles of sovereign immunity apply to the analysis here? We have dealt with this, Your Honor. The claim was timely filed. I mean, below, the court has said the claim has timely filed. I mean, the sovereign has waived immunity for this type of claim. There's a statute that provides, specifically, for the payment of the interest on overpayments. Now, an interesting part of 6621G, it uses the word overpayment 21 times. But when you go to our statute, instead of using the word mathematically verify the overpayment, they use mathematically verify the tax liability. They didn't say let's mathematically verify every line on the return. They said let's mathematically verify the overpayment. I mean, mathematically verify the tax liability. What does tax liability mean? Tax liability is the tax liability shown on line 5. I mean, tax liability is the tax that's owed by the taxpayer for the year. So can liability be a refund? No. The tax court recently decided on rent. Tax liability can't go below zero. An overpayment is the refund. But the tax liability is the $105 million. Tax liability is computed without payments. Because you can have a tax, what if the third party hadn't made the payments or they hadn't sent us the receipts for the payments? We'd still need to file the return. And it would have been a processable return without the payments because we would still have $105 million tax liability that had to be filed on the return. So Congress chose those words. Congress didn't use, in 6611, they used the word overpayment 21 times. But in 6611 G, they used the words mathematical verification of the tax liability shown on the return. So we're saying that this construction was inconsistent with the plain language of the statute and inconsistent with the fact pattern that you had in Columbia Gas. If you remember what you had in Columbia Gas, you had the 1120s and you had the 1139s. Then there was a net operating loss. And then there was another 1139. So the number on the return was then reduced by the number on the 1139. Then the number on the next return was reduced by the NOL. Then the number was reduced by the next 1139. So when you were talking about the tax liability on the return and the permitted attachments, I mean required forms, every claim was a required form that reduced the tax liability. When your opinion in Columbia Gas doesn't talk about verifying the overpayment, it went through that complicated scenario of verifying the tax liability because each form reduced the tax liability. So you went with mathematical verification of the tax liability. I'm sorry. I guess you're on. Thank you, Your Honor. Ms. Snyder. May it please the Court. I'd like to begin just by pointing out what this case is not about. I think this came up a little bit a few minutes ago. It's not about the IRS or its processes or what may or may not have existed elsewhere in the IRS building. The case under the plain language of the statute is about what Deutsche Bank's return contained when Deutsche Bank admitted it. I'm sorry to interrupt, but can you just respond to the final point your friend was making about the relevance of the fact that in G2B2 the use of the word is verification of tax liability as distinct, separate and distinct from overpayment. Could you kind of explain to us whether the government thinks there's a relevant distinction between the use of the two terms and if so, why it matters? Not here because Section 6611 pertains entirely to interest on overpayments. So I understand their argument to be that the only relevant line is line 5, which is total tax. You don't look at payments. As a preliminary matter, that's a new argument on appeal. It was not presented to the Court of Federal Claims. It should not be considered here as we explained in our brief. But, you know, secondarily, that just doesn't make any sense in the context of a statute that pertains only to interest on overpayments. And when you look at the Senate report on that, it backs it up. It says, you know, no interest runs until the IRS can determine that such overpayment exists. And they obviously can't determine that an overpayment exists unless they look at the payments. So I think tax liability in this context, it can be either positive or negative. Why wouldn't it be exactly the other way around? Tax liability in a statute that deals only with interest on overpayment simply can't cover a deficiency. It can only be one side. Well, I think technically... It cuts exactly against you, not in your favor. What Congress wanted the IRS to be able to mathematically verify was the tax liability either positive or negative. They wanted us to be able to figure... But there's only one side in this statute, right? This section? Because, as you say, it's a refund section. Right, although I suppose the IRS could look at the corroboration and say, no, there's not an overpayment. I guess they could say that. But here, yes, there is an overpayment. So we're just talking about the amount of the overpayment. Does that come within the general... Is tax liability generic enough to include overpayments? Yes, I think it is. I mean, I think the other things that Deutsche Bank is trying to use to say that it's not are really terms of art where we're looking at the tax court's deficiency jurisdiction and something like that, which really has nothing to do with this. So, yeah, I think tax liability is generic enough that it can be either positive or negative. So why was the information on the forms necessary to support the mathematical verification of tax liability? Because, as this court explained in Columbia Gas, the IRS needs to be able to recalculate and corroborate the information on the return. It's not just can we add up the numbers on the face of the return and come to the same total number. We have to be able to recalculate and corroborate those amounts. And so that's why, as the court explained, they have to file all required forms and enough underlying data for the IRS to be able to verify the tax liability shown. So that's why they're important. And I think there's no dispute, really, that they were required. I mean, I think it's pretty clear on the face of the forms themselves and on the instructions and on the face of Deutsche Bank's tax return and on the instructions of the tax return that those forms are required. But if the government's interpretation of the statute is not is it that the return, just because they didn't file the forms, they lose. You do read the statute as having a second requirement, is that you have to show that these were necessary for verification. Well, here they were. And what you're asking, I think, is that if there were theoretically a required form that were not necessary to verify the tax liability, what's our position? And I think I agree with you. It's really it's all required forms that factor into the calculation of the tax liability, which these do. I think theoretically maybe there could be a form where they had to list their shareholders or something like that, and maybe that's required and maybe they didn't submit it. And I don't know whether if that's not necessary. If it doesn't go into the calculation of the tax liability, then maybe the return is still possible. But here the issue is that without the required forms, we couldn't mathematically verify the tax liability shown on the return. What you're saying is that verification is more than simply mathematical calculation. Verification means determining whether it's true, and that requires looking at the underlying documents that the form says attach. Right. I'm saying it means we have to be able to recalculate and corroborate it. Corroborate it. Yeah. That's just using the last... That's what verification means, to determine if it's true. That's what the court said in Columbia Gas, is that we have to be able to recalculate and corroborate. And there has to be sufficient underlying data for us to verify the tax liability shown. So that's exactly what these forms are for. They enable us to recalculate and corroborate this lump sum number that's on the face of the return. It just says, you know, here's the total amount of withholding. And in fact, Deutsche Bank's own actions show that the forms are necessary to recalculate and corroborate the number, because it was only after we sent the return back and we said, you need to file 8805 and 1042S, that they reviewed the forms and... If this court accepts Deutsche Bank's reading of the term tax liability, do you lose? I don't think so, because... I mean, I suppose these forms also showed the amount of income. You know, there was, like, the 8805 showed the amount of effectively connected income. But you don't dispute that those forms have nothing to do with calculating the total tax, right? Well, I'm thinking about this. I think that to the extent that the 8805 says, this is your effectively connected income, that does go into the income number, which goes into the total tax. You know, I hadn't thought about it quite that way. But, yeah, I don't think that means that we lose. But I think, I mean, really, Congress couldn't have meant that you only look at the total tax when they're talking about whether to give an interest, whether to pay interest on an overpayment. I mean, they would basically... It just doesn't make sense in the context of... Unless you construe looking at the total tax to encompass the overpayment, right? Because the total tax necessarily encompasses an underpayment as well as an overpayment. The tax liability encompasses underpayment as well as overpayment. What they're trying to... What they're talking about is not tax liability. It's just total tax before you consider any payments. That's the problem with their argument, is that they're saying that even though this whole statute is about when we start paying interest on overpayments, you don't look at payments. You just look at tax. So that's the problem. They're trying to conflate total tax with tax liability. Is it the government's position that the word return as used here encompasses by itself all of the forms that are required? Well, what the statute says is whether on the return or on required attachments. Right, which suggests that attachments are not part of the rate of return. Well... I'm not sure that that matters. I mean, technically, maybe a schedule is part of a return and an attachment is an attachment to a return rather than the return itself. But, you know, like the Court of Federal Claims said, it really doesn't matter. You know, whether you call the 8805 and the 1042-S a form or whether you call it an attachment or whatever you call it, it's clear that they didn't file it. So, you know, it doesn't really matter. You know, responding to the point that Deutsche Bank raised that, you know, the government, we had their money and, you know, basically we got the time value of the money but we're not paying interest, Congress knew that. When it enacted the statute, Congress knew that there was an overpayment that we had but Congress nevertheless said the return has to be processable before we have to pay interest on the overpayment. So, I mean, that was a decision that Congress made. And another point, I disagree with Deutsche Bank's reading of the statute as basically... It sounds like they're saying it sets a lower standard for a processable return than for a valid return and I think it's actually the opposite. Whether a return is valid for limitations purposes depends on a four-factor test that's sort of come down from the common law that looks at things as, you know, whether it purports to be a return, whether it's an honest attempt to... You know, that kind of thing. Whereas here, Congress is saying they're requiring something more. They're saying it has to be mathematically verifiable. A return can be valid for statute of limitations purposes without being mathematically verifiable for purposes of paying interest on an overpayment. And also, getting back to the point about whether the IRS could have done this itself, whether it could have figured it out itself, that is a factual dispute. It was disputed in the Court of Federal Claims below whether or not the IRS automatically correlated the documents. But fundamentally, it's irrelevant because under the plain language of the statute, the return has to contain the necessary information. And Deutsche Bank's argument essentially reads the word contain right out of the statute. And it's like this Court also explained in Columbia Gap, the taxpayer has to submit the information. You know, whether or not we could have done it some other way really doesn't matter. It was disputed below, but it's irrelevant. Does the Court have any further questions? Thank you. Thank you, Ms. Schneider. Mr. Agostino? Very briefly, Your Honor. This is about the choices of words that Congress used in 6611G. They used the word overpayment 21 times before, I mean in 6611, before we got to G. So we have to assume that Congress understood that they weren't talking about overpayments when they talked about mathematical verification of a tax liability. They redefined return in 6611G. So we can presume that Congress wasn't talking about the return as generally defined in 6011. Whether it's more or less strict or not, if we apply the words that were used by Congress literally to Deutsche Bank's return, the return was processable. Thank you, Your Honor, unless you have more questions. Thank you, Mr. Agostino. Our final case.